UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:15-cv-00231-RJC

| | |
|---|---|
| AMY A. GILMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 11), and Memorandum in Support, (Doc. No. 12), and Defendant's Motion for Summary Judgment, (Doc. No. 15), and Memorandum in Support, (Doc. No. 14).

**I.     BACKGROUND**

   A.     Procedural Background

Plaintiff Amy Gilman ("Plaintiff") seeks judicial review of Defendant Social Security Commissioner's ("Defendant" or "Commissioner") denial of her social security claim. (Doc. No. 1). Astoundingly, Plaintiff's social security claim has been pending at various levels of the administrative process for over ten years. On December 20, 2006, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 405 et seq. (Doc. Nos. 8 to 8-25: Administrative Record ("Tr.") at 136–41). Plaintiff alleged an inability to work due to disabling conditions beginning on May 1, 2006. (Id. at 137). She later amended her application to allege disability beginning on January 1, 2006. (Id. at 140). The Commissioner denied

Plaintiff's application initially on May 3, 2007, and again after reconsideration on October 5, 2007. (Id. at 69–78, 80–88). Plaintiff filed a timely written request for a hearing. (Id. at 90–91).

On July 17, 2008, Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Id. at 42–64). Due to new evidence, a supplemental hearing was held on December 17, 2008, at which Plaintiff neither appeared nor testified, but at which her counsel did appear. (Id. at 21–41). The ALJ issued a decision on January 15, 2009, denying Plaintiff's claims. (Id. at 9–20). Plaintiff filed a request for review of the ALJ's decision on or about January 21, 2009, which the Appeals Council denied on May 27, 2010. (Id. at 1–8).[1] On July 30, 2010, Plaintiff filed a complaint seeking judicial review of her case and it was remanded on June 10, 2011 based on a consent motion for reversal and remand by Defendant. Gilman v. Astrue, 1:10-CV-00158-MR-DLH (W.D.N.C. filed July 30, 2010).

Following the District Court's remand, another hearing was held on February 22, 2012 before the ALJ. (Tr. at 453–73). Plaintiff, represented by counsel, appeared and testified. (Id.). The ALJ issued a decision on April 12, 2012, denying Plaintiff's claims. (Id. at 426–46). The Appeals Council did not review the decision within sixty days of the decision date, and thus it became the final decision of the Commissioner. Plaintiff again filed a complaint in federal court seeking judicial review of her case and again her case was remanded based on a consent motion for reversal and remand field by Defendant. Gilman v. Astrue, 1:12-CV-00224-MR-DLH (W.D.N.C. filed August 9, 2012) (Tr. 1009–013 (Complaint); 1014–020 (Remand Order)).

Following the District Court's remand, yet another hearing was held on October 7, 2013 before a new ALJ. (Tr. at 908–49). Plaintiff, represented by counsel, appeared and testified. (Id.).

---

[1] While Defendant's request to the Appeals Council was pending, on December 22, 2009, Plaintiff filed a new application for SSI under Title XVI of the Social Security Act, 42 U.S.C. § 405 et seq.

The ALJ issued a decision on October 22, 2013, denying Plaintiff's claims. (Id. at 426–46). Plaintiff filed a request for review of the ALJ's decision on or around November 26, 2013, and the Appeals Council granted Plaintiff's request and ordered remand to the ALJ on November 10, 2014 because the ALJ improperly considered Plaintiff's polysubstance abuse before completing the sequential evaluation procession. (Id. at 844; 1054–59). The Appeals Council instructed the ALJ on remand to first determine whether Plaintiff is disabled, and if the Plaintiff is found disabled, then to determine whether drug addiction or alcoholism are material to the determination. (Id. at 1056–057).

On February 27, 2015, Plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. (Id. at 875–901). The ALJ issued a decision on June 9, 2015, denying Plaintiff's claims. (Id. at 810–39). The Appeals Council declined to review the decision, (Id. at 841); therefore, the ALJ's decision became the final decision of the Commissioner.

Plaintiff's Complaint seeking judicial review and a remand of her case was filed in this Court on October 8, 2015. (Doc. No. 1). Plaintiff's Motion for Summary Judgment, (Doc. No. 11), and Plaintiff's Memorandum in Support, (Doc. No. 11-1), were filed April 29, 2016; and Defendant's Motion for Summary Judgment, (Doc. No. 15), and Defendant's Memorandum in Support, (Doc. No. 14), were filed September 1, 2016 and September 2, 2016, respectively. Plaintiff did not file a response to Defendant's Motion for Summary Judgment and the time for doing so has passed. The pending motions are ripe for adjudication.

B.     Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between January 1, 2006, and the date of

his decision on June 9, 2015.[2] (Tr. at 831). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from January 1, 2006, through the date of his decision, June 9, 2015. (Tr. at 810–39).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
> (4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
> (5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i–v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. at 830–31).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since January 1, 2006, the alleged disability onset date. (Id. at 815–16). At the second step, the ALJ found that Plaintiff had the following severe impairments: "Polysubstance Abuse; Bipolar Disorder; Post-Traumatic Stress Disorder; Panic Disorder, without agoraphobia;

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

Personality Disorder NOS; Bipolar Affective Disorder Type II; Anxiety Disorder, NOS; Histrionic Personality Disorder; and Mood Disorder." (Id. at 816). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1." (Id. at 816–17).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform "a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, repetitive work requiring frequent contact with co-workers, supervisors, and the public." (Id. at 818). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work. (Id. at 829). At the fifth and final step, the ALJ concluded, based on the testimony of a vocational expert and "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [that] there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id. at 830). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, from January 1, 2006 through the date of his decision. (Id. at 21).

## II.   STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the

Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

On appeal to this Court, Plaintiff argues that the ALJ erred as a matter of law in denying her claims because the ALJ: (1) failed to properly analyze Plaintiff's RFC; (2) failed to assign

proper weight to treating medical sources and consultative examiners; and (3) incorrectly concluded that none of Plaintiff's severe impairments qualified as disabilities under the Listing of Impairments. (Doc. No. 11-1 at 2). Plaintiff also argues that a June 17, 2014 decision made by the North Carolina Department of Health and Human Services, Medicaid Division, concluding that Plaintiff is disabled is new and material evidence that requires the Commissioner's review on remand. (Id. at 3). The Court will consider each of Plaintiff's arguments in turn.

    A.  <u>Whether the ALJ Properly Analyzed Plaintiff's RFC</u>

The responsibility for assessing a claimant's RFC falls exclusively on the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c). The RFC determination requires the ALJ to determine an individual's ability to do sustained work-related activities and in so doing to identify an individual's functional limitations. SSR 96-8p, 1996 WL 374184, at *1. As with the ALJ's other determinations, the RFC must be supported by substantial evidence. In <u>Mascio v. Colvin</u>, the ALJ found that the claimant had moderate difficulties in maintaining concentration, persistence, or pace, but the ALJ's RFC finding, and consequently the hypothetical presented to the VE, limited the claimant to merely "light work." 780 F.3d at 637–38. In reviewing that case, the Fourth Circuit held that an ALJ must adequately account for a claimant's limitations through a function-by-function analysis. <u>Id.</u> Importantly though, the Fourth Circuit declined to adopt a *per se* rule requiring remand whenever an ALJ does not perform an explicit function-by-function analysis because "remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" <u>Id.</u> at 636 (quoting <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Therefore, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." <u>Id.</u> (quoting <u>Cichocki</u>, 729 F.3d

at 177). Put more simply, where the Court is left to guess as to how the ALJ arrived at his conclusion on a claimant's ability to perform relevant functions, remand is necessary. Id. at 637.

Here, the ALJ found that Ms. Gilman had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, repetitive work requiring frequent contact with co-workers, supervisors, and the public." (Tr. at 818). Plaintiff contends that this finding fails to follow the Mascio analysis and is not supported by credible evidence. In particular, Plaintiff argues that the ALJ was inconsistent in that the resulting RFC does not reflect the previous findings of the ALJ, which included severe impairments. (Doc. No. 11 at 6). Plaintiff also asserts that the ALJ's conclusions that "the clinical record does not support a marked limitation in ability to respond" are not supported by evidence in the record. (Id. at 9).

Defendant responds to Plaintiff's assertions by arguing that the ALJ did support his RFC conclusion with substantial evidence. (Doc. No. 14 at 12). Defendant states that the ALJ relied on various findings, such as reports from Dr. Marcus, Dr. Carraway, Dr. Joseph, a 2012 ETSU Department of Psychiatry and Behavioral Services examination, a 2012 ETSU report, and a 2013 examination at Woodridge Hospital. (Id. at 13).

Here, the Court agrees with Plaintiff and finds that the ALJ's determination is inconsistent in regards to assessing Plaintiff's mental capacity. The ALJ's RFC discussion fails the function-by-function analysis mandated by Mascio. Specifically, the ALJ failed to account within his analysis his own moderate severity findings. At Step Three, the ALJ determined that Plaintiff had moderate difficulties in concertation, persistence, or pace by relying in part on Plaintiffs testimony. (Tr. at 807). The ALJ would later determine that that testimony was less than credible. (Id. at 828). The ALJ also relied upon the medical record, stating it "reveals that, at times, [Plaintiff] has been described as appearing anxious and slightly depressed and having rapid and flowing thoughts,

a labile mood, a tired and sluggish mood, an elevated mood, and increased/pressured speech." (Tr. 817). At the same time, however, the ALJ determined within Step Three that Plaintiff "displays adequate immediate, recent, and remote memory and adequate ability to maintain concentration, persistence, and pace." (Id.). During Step Four, the ALJ failed to mention Plaintiff's moderate limitations in concentration, persistence, or pace and how they affect Plaintiff's RFC, but twice mentions that he agrees such moderate limitations exist. (Id. at 828).

Defendant is correct that the ALJ's recitation of the clinical record includes instances of improved or normal concentration. However, mere recitation of the record fails to capture the whole picture. For instance, Defendant points to Dr. Carraways' findings, which showed a less severe limitation on Plaintiff's concentration, but fails to mention that the ALJ did not assign full credibility to those findings. (Doc. No. 14 at 13). In fact, the ALJ specifically stated that he agreed with the State Agency's conclusion that Plaintiff has moderate impairments in both social interactions and concentration, persistence, and pace, and thereafter determined that Dr. Carraway's assessment failed to reveal the true extent of those limitations. (Tr. 282).

Furthermore, the limitation imposed by the ALJ—the nonexertional limitation of "simple routine, repetitive work requiring frequent contact with co-workers, supervisors, and the public"— has been rebuked by the Fourth Circuit in Mascio from adequately addressing a moderate limitation in concentration, persistence or pace. Mascio, 780 F.3d at 638 (finding that "an ALJ does not account 'for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"); see also Harris v. Colvin, 2016 U.S. Dist. LEXIS 165067, *7-8 (D.S.C. Nov. 8, 2016) (finding that, prior to Mascio, "restricting a claimant to routine, simple work to account for mental impairments, to include a moderate restriction with respect to concentration, persistence or pace, was an RFC

formula that had found support in previous case law...."). The Fourth Circuit concluded that routine tasks do not reflect one's ability to concentrate and stay on task. Rather, routine tasks address the complexity of a claimant's work. Id. at 638. Not only does the ALJ fail to mention the effect Plaintiff's moderate limitation of concentration, persistence, or pace within the RFC analysis, he also assigns one limitation which the Fourth Circuit determined was inadequate to address Plaintiff's moderate limitations. The Court is therefore left to guess how the ALJ could determine that Plaintiff suffers from a moderate mental limitation which has no impact whatsoever on the resulting RFC.

In parsing out what little explanation the ALJ has given, the Court notes the ALJ's reliance on the fact that Plaintiff's symptoms seem to improve with medication. The ALJ also explains that Plaintiff's inconsistent statements within the record negatively impact her credibility. (Id.). The ALJ even touches on Plaintiff's daily living activities, explaining that she was able to work at Burger King since September 2014. However, the ALJ's RFC findings mention concentration, persistence, and pace only to admit that such limitations exist in a moderate form. Ultimately, though, the ALJ fails to incorporate how that moderate limitation impacts Plaintiff's mental abilities in a work setting. The ALJ does not mention how Plaintiff's moderate limitation affects her ability to understand, remember, or carry out instruction. 20 C.F.R. §§ 404.1545(c). Nor does the ALJ determine how Plaintiffs moderate limitation in concentration fails to negatively affect her ability to respond to supervision, co-workers, and work pressure in a work setting, or how to use judgement or deal with changes in a routine work setting. Id.

B. Whether the ALJ's Credibility Assignments Are Adequately Explained and Supported by Substantial Evidence

Plaintiff contends that the ALJ improperly weighed medical opinions from a treating physician, Dr. John Pierson, and from two consultative examiners, Drs. Deborah Barnett and

Karen Marcus. (Doc. No. 11-1 at 10–12). The ALJ assigned limited evidentiary weight to all three doctors. (Tr. at 828–89).

The Fourth Circuit has held that the treating physician rule does not require that a treating physician's opinion automatically be afforded controlling weight. Hunter, 993 F.2d at 35. "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (upholding ALJ's rejection of treating physician's opinion because the record contained contradictory evidence)).

Pursuant to SSR 96–2p, an ALJ must "give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion." S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996). Specifically, the "notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. The Fourth Circuit has set forth the following factors to consider when determining the weight of a physician's medical opinion if not according it controlling weight:

>   (1) whether the physician has examined the applicant,
>   (2) the treatment relationship between the physician and the applicant,
>   (3) the supportability of the physician's opinion,
>   (4) the consistency of the opinion with the record, and
>   (5) whether the physician is a specialist.

Johnson v. Barnhart, 434 F.3d 650, 655 (4th Cir. 2005); 20 C.F.R. § 404.1527(c). Although an ALJ must consider all of these factors, the ALJ does not need to explicitly provide a factor-by-factor analysis or discuss every factor in the decision. Henley v. Astrue, No. 3:11-CV-488, 2012 WL 2804846, at *3–4 (W.D.N.C. July 10, 2012); Warren v. Astrue, No. 5:08-CV-149, 2009 WL 1392898, at *3 (E.D.N.C. May 18, 2009).

The ALJ assigned Dr. Pierson limited evidentiary weight. (Tr. at 829). In doing so, the ALJ noted that Plaintiff misled the doctor to believe that she had no history of substance abuse. (Id.). The ALJ also emphasized that Plaintiff did not seek regular, ongoing treatment with Dr. Pierson. (Id.). In assessing Dr. Barnett's weight of credibility, the ALJ found that her opinion ultimately supported the determination that Plaintiff was not disabled. (Tr. at 828-29). However, the ALJ stated Dr. Bennett underestimated Plaintiff's mental limitations, which were supported by the clinical record as a whole. (Id.). Accordingly, Dr. Barnett's opinion was assigned little evidentiary weight. (Tr. at 829). As for Dr. Marcus, the ALJ again assigned limited evidentiary weight. (Id.). The ALJ explained that the doctor's opinion was "purely speculative," relied heavily on Plaintiff's unreliable statements, and was inconsistent with her own objective findings. (Id.).

The Court finds that the ALJ properly explained his reasoning in assigning less than credible weight to the medical sources above. Specifically, the ALJ properly considered the relevant factors by assessing consistency and the nature of the doctor's relationship. Furthermore, the Court finds that the supportability of a medical opinion may diminish when based on discredited evidence. Here, such evidence includes Plaintiff's statements, which were determined to be less than credible by the ALJ earlier in his decision. (Id. at 828).

C. Whether the ALJ's Conclusion that None of Plaintiff's Severe Impairments Qualified As Disabilities Under the Listing of Impairments Is Supported by Substantial Evidence

Plaintiff also argues that the ALJ erred at Step 3 by finding that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1." (Doc. No. 11-1 at 12–14). In support of this argument, Plaintiff relies on evidence from the record of six different hospital admissions and cites to one Fourth Circuit case for the proposition that the ALJ needs to identify the relevant listed impairments, compare them to the evidence of the Plaintiff's symptoms, and provide an explanation. (Id.); Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). Plaintiff's argument lacks merit because the ALJ met his procedural burden and his decision is supported by substantial evidence.

To meet a listing requirement for a particular mental disorder, a Plaintiff's impairment must satisfy the requirements of at least two paragraphs for the listing. 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.08, and 12.09." (Tr. at 816). Under Paragraph A, a claimant must meet certain criteria specific to the relevant mental disorder. 20 C.F.R. § 404, Subpart P, Appendix 1. Despite identifying the relevant listed impairments, the ALJ failed to compare the listing requirements to the evidence of the Plaintiff's symptoms, but, contrary to Plaintiff's argument, the ALJ was not required to do so.

"[A]n ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." Drane v. Colvin, No. 1:10-CV-00901, 2014 WL 408753, at *4 (M.D.N.C. Feb. 3, 2014) (citing Cook, 783 F.2d at 1172). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment."

Ketcher v. Apfel, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (citing Russell v. Chater, 60 F.3d 824 (4th Cir. 1995) (table)). Although the ALJ did not discuss Plaintiff's symptoms in direct connection with his Paragraph A conclusion, the ALJ's decision contains a lengthy description of Plaintiff's symptoms and medical records. Unlike in Cook because the ALJ identified specific listings and provided a detailed discussion of the medical evidence and the ALJ's conclusion that Plaintiff is not disabled.

Furthermore, the Court notes that the ALJ provided discussion of the Paragraph B and Paragraph C requirements. Under Paragraph B, a claimant must show marked limitation in two of the four areas of mental functioning (or extreme limitation in one area). Id.; (Tr. at 816–17). The ALJ evaluated each area and concluded that Plaintiff did not have marked limitation in any of the areas of mental functioning. (Tr. at 816–17).

In short, the ALJ was not required to provide an extended discussion on the listings and did not err by failing to do so.

> D. <u>Whether on Remand the North Carolina Department of Health and Human Services, Medicaid Division's Decision Concluding that Plaintiff Is Disabled Constitutes Material Evidence That Requires Review</u>

Finally, Plaintiff contends that a one-page document showing that the Medicaid Division for the state of North Carolina found Plaintiff to be under a disability since October 2013 due to mood disorder and paranoia is new and material evidence that requires remand so that the ALJ can review. (Doc. No. 11-1 at 14–15; Doc. No. 11-2). Under 42 U.S.C. § 405(g), a district court may remand to the Commissioner for further proceedings when a party presents "new evidence which is material" and when "there is good cause for the failure to incorporate such evidence not the record in a prior proceeding." The evidence here is not new. As both parties acknowledge, the ALJ was made aware of the North Carolina Medicaid disability decision, and furthermore, the ALJ

noted the North Carolina Medicaid award in his decision. (Tr. at 827, 828) ("The claimant further testified that she has been approved for disabled Medicaid . . . . The claimant's current testimony reveals that she is now receiving disabled Medicaid."). The one-page transmittal sheet does not add any new evidence, or at minimum, does not add any new and material evidence because the ALJ was already aware of Plaintiff's state disability benefits award. See Wilkins v. Sec'y Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) ("Evidence is deemed new if it is not duplicative or cumulative of evidence already in the record.").

## IV.  CONCLUSION

After reviewing the ALJ's decision, the transcript of the proceedings, the record, and the Parties' motions and briefs and all the arguments therein, the Court finds that the ALJ's decision inadequately considered Plaintiff's moderate limitation of concentration, pace, or persistence when calculating Plaintiff's mental RFC. The rest of the ALJ's decision, however, was supported by substantial evidence and applied the appropriate legal standards. The Court therefore remands the ALJ's decision for a more thorough discussion of Plaintiff's moderate limitation in concentration, persistence, and pace within the Step Four analysis.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**;
2. Defendant's Motion for Summary Judgment, (Doc. No. 15), is **DENIED**; and
3. The Court hereby **VACATES** the decision of the Commissioner and **REMANDS** this case for further administrative proceedings consistent with this Order; and
4. The Clerk of Court is directed to close this case.

Signed: January 5, 2018

Robert J. Conrad, Jr.
United States District Judge

SEALED DOCUMENT with access to All Parties/Defendants.